[S. F. No. 1486.   Department Two. — February 27, 1901.]

CLARA BAUM, Administratrix, etc., Respondent, v. EDWARD ROPER et al., Appellants.

EJECTMENT — ADVERSE POSSESSION OF PLAINTIFF'S GRANTOR — QUESTION OF FACT — SUPPORT OF ·FINDING. — Where the plaintiff in ejectment claimed title under a remote grantor, which had its origin in adverse possession, the question of fact as to the sufficiency of such adverse possession to establish title is for the trial court, and its finding will not be disturbed, where the evidence is conflicting, and there is some evidence tending to support it.

ID. — PROBATE SALE TO PLAINTIFF — OUTSTANDING DEED OF TRUST — SUBSEQUENT RECONVEYANCE. — Where the plaintiff in ejectment claimed title under a probate sale of the real property of an intermediate grantor, the fact that at the time of the sale there was an outstanding trust deed, made by the decedent to secure the payment of a debt, cannot be availed of by the defendant as an outstanding title, as against the plaintiff, where it appears that the property was reconveyed during the same year, which was eighteen years before the commencement of the action.

ID. — PETITION FOR SALE — CONDITION OF PROPERTY — OBJECTION NOT TAKEN AT TRIAL. — Where no objection was urged at the trial to the petition for the sale of the real estate of a deceased person, that it did not contain a proper statement of the condition of the property,

such objection cannot be considered upon appeal; but the petition must be treated as properly describing such condition.

Id. — Probate Sale of Lot not Petitioned for — Collateral Attack. — Where the statute in force at the time of the probate sale did not control the court as to its order of sale by the desire or prayer of the executor, and the petition stated the jurisdictional facts as to the condition of the property, the court had jurisdiction to order the sale of a lot described in the petition, the sale of which was not petitioned for, and the sale under such order cannot be collaterally attacked on the ground that the petition was to sell other real estate, and not the lot in controversy.

Id. — Adverse Possession of Defendants — Evidence — Good Faith — Satisfaction of Judgment. — Where the defendant's rights in the land in controversy rested upon a claim of adverse possession in himself and his predecessors, evidence of his good faith in satisfying a judgment not offered in evidence is immaterial, and was properly excluded.

Id. — Permission to Pasture Cow — Rejection of Preliminary Question — Offer not Made — Error not Shown. — Where a witness, called for defendant, testified that his deceased brother had pastured a cow upon the lot in question for twelve or thirteen years, the rejection of a leading preliminary question, relative to the knowledge of the witness as to how and by whose permission the cow was put there, was not error, where there was no offer to show any date, or to follow up the question, or to prove that it was by the permission of the defendant, or of any one to whose rights he claimed to have succeeded.

Id. — Declarations as to Holding under Defendant — Preliminary Question — Ineffectual Inquiry. — The rejection of a preliminary question, as to whether the witness heard an occupant of the lot declare whether he was occupying for himself or by permission, is harmless, if the inquiry was not directly followed up, and it appeared, by subsequent answers of the witness, that further inquiry as to declarations that the occupant was holding under the defendant would be ineffectual.

APPEAL from a judgment of the Superior Court of the City and County of San Francisco. Charles W. Slack, Judge.

The facts are stated in the opinion of the court.

J. B. Mhoon, and T. M. Osmont, for Appellants.

Edward R. Taylor, for Respondent.

THE COURT.—This is an action in ejectment; the case was tried before the court without a jury; the plaintiff had judgment, from which, and from an order denying them a new

trial, the defendants appeal.   The subject of the suit is a lot
on the southeast corner of Turk Street and Van Ness Avenue,
in the city of San Francisco, and fronting 50 feet on said
avenue and 109 feet on said street.

1. The appellants' first contention is to the effect that the
evidence does not justify the finding of the court that the
plaintiff was the owner of the lot in controversy.

The title claimed by each of the parties depends, in part at
least, upon adverse possession.   The plaintiff claims that her
deceased husband, Julius Baum (who was the original plain-
tiff in this suit), was the grantee of the lot in controversy, at
a probate sale in the matter of the estate of Robert Muhlen-
dorff.   The executor's deed to Baum under this sale bears
date January 22, 1874.   It is further claimed by plaintiff that
the title of Muhlendorff had its origin in an adverse possession
of one Beideman, beginning as early as 1858, and continued
by him and successive grantees down to the time of the said
conveyance to Baum.

The evidence is claimed particularly to be insufficient in
respect to this adverse possession.   We have examined the
evidence in this particular, and find that while there is much
conflict, yet the conclusion reached by the trial court in this
respect is without evidence to support it.

Beideman's possession as early as 1858 is shown by the
testimony of the witness McGlone, who worked for Beideman,
and looked after his fences inclosing the land in controversy.
Beideman had the lot, with other lands, inclosed with a fence
when McGlone went to reside on the block, of which said lot
was a part, in 1858.   McGlone resided on that block, near the
middle of it, in Beideman's house, for two and a half years
thereafter, and testifies, in substance, that Beideman was in
the occupation of the lot in controversy and that it was within
his inclosure during that period.   The witness P. D. Dunn
moved to a place on Turk Street, just west of the lot in con-
troversy, in 1860, and lived there for eighteen years thereafter.
When he moved out there the Beideman fences inclosed said
lot.   The testimony of several other witnesses tends strongly
to show that these fences erected by Beideman were main-
tained and continued to inclose the said lot down to a date
long after the said probate sale to Baum, and that there was
no change in the fences from 1858 until after such sale.   In
1874 or in 1876, or some time thereafter (the evidence being

in conflict as to the date), a fence was run diagonally through the lot in controversy, by defendant or under his direction, and since the erection of that fence he has claimed, as we understand the evidence, that portion of the lot to the north of this diagonal fence; but, treating the probate sale to Baum as valid (as we shall presently show it to be), the evidence as to possession of the premises subsequent thereto is not of a character to show title in defendant by adverse possession or in any way to affect the finding as to ownership. We deem it unnecessary to quote at length the evidence on this question of adverse possession, or to attempt to analyze it to any extent. The record on appeal illustrates the wisdom of the rule which leaves the decision of questions of fact with the trial court, for from it we learn that the witnesses, in defining boundaries, showing the location of the lot in question, where fences were located, and in testifying as to the possession of the premises, used a map or maps in a way perfectly intelligible to the trial judge, no doubt, but from which we can derive no aid whatever as the matter is presented in said record. So far as we can see, therefore, the court was warranted in the conclusion reached as to the adverse possession of Baum's predecessors, and the probate sale to Baum being valid, the finding of title in him was justified.

2. Appellant contends that there is a fatal flaw in plaintiff's deraignment of title, by reason of the evidence showing an outstanding title by virtue of a trust deed of the premises given by Muhlendorff and another to Burr and Dean. There are two good reasons why this point is not available to appellant: 1. There is no specification directed to this point as a matter in regard to which the evidence is insufficient; 2. The evidence shows that the trust deed was given to secure the payment of a debt, and the record before us contains the following recital:—

"Plaintiff then offered in evidence a deed of reconveyance, dated August 12, 1874, and acknowledged August 21, 1874, wherein all the interest which had been conveyed by the aforesaid deed of trust of Muhlendorff and Weck to Burr and Dean was reconveyed. . . . Said deed was thereupon read in evidence."

This reconveyance took place, it seems, eighteen years before the commencement of this action. The deed last referred to is not before us; but we cannot see, on the record as above

quoted, how it can now be said that there was any outstanding
title on account of the making of the trust deed that would be
available as against the plaintiff at the time of the commence-
ment of this action.

3. There was no error in excluding evidence of satisfaction
of judgment in the case of Reed *v.* Buckelew *et al.* It was not
contended by plaintiff that said judgment affected defendant's
title adversely,—indeed, the judgment was not in evidence,
nor was it offered in evidence. What necessity, then, could
there be to show that it was satisfied? Appellant contends
that it was relevant to show Roper's good faith, but Roper's
rights in the land depended, not upon his good faith, but upon
the adverse possession of himself and his predecessors in occu-
pation, to whose rights he had succeeded.

4. After showing by the testimony of William Culligan,
brother of John Culligan, deceased, that the latter had been in
the habit of pasturing his cow on the lot in controversy for a
period of twelve or thirteen years, the defendant asked said
William the following question: "Did you know how John
Culligan happened to put his cow there, by whose permission?"
An objection to this question was sustained, and defendant
claims this was error. At the time this question was asked it
had not been shown what dates were covered by the twelve or
thirteen year period during which the cow was kept on the lot;
nor was any offer made to show any dates in connection with
the question.

The question was also merely preliminary,—could have
been answered by "yes" or "no,"—and no effort or offer seems
to have been made to follow it up. The witness was not asked
to state by whose permission the cow was placed on the prem-
ises, nor was any offer made to prove that the cow was placed
there by permission of defendant, or by permission of any one
to whose rights he claimed to have succeeded. We can see no
error in the ruling of the court.

5. The court sustained an objection to a question asked by
defendant of William Culligan, which question reads as fol-
lows: "Mr. Culligan, did you ever hear your brother, John
Culligan, while he occupied that lot, and upon the premises,
say anything as to whether or not he was occupying the lot for
himself or claiming it for himself, or keeping it by permission
of another?" Here, again, a question, merely preliminary,
was asked, with no attempt to follow it up, and in this instance

the subsequent answers of the witness show conclusively that any attempt to pursue the inquiry further would have been ineffectual, for the witness subsequently testifies: "Do not know that I was ever on this lot with my brother John; do not think I was"; and when asked if, when on the lot or alongside the lot, he ever heard any conversation between Roper and his brother "touching their relations to each other, and as to whether or not Mr. Culligan, your brother, held under Mr. Roper," he answered, "I don't remember, sir." In view of these answers of the witness, it is not necessary for us here to determine whether the declarations of a party in occupation of premises, not made against his interest, as to how he holds the same, come within the rule rejecting hearsay evidence.

6. An objection is urged to the petition for a sale of the real estate in the Muhlendorff estate, to the effect that said petition was insufficient to give the probate court jurisdiction to make the order of sale under which Baum claimed title. The petition describes all the property of the estate, and shows the real estate to consist of four parcels, three of them being in the Potrero, and their condition is described in said petition as "unimproved and unproductive." As to the lot in controversy, the petition alleges that it "is improved, and about one half of it is in the adverse possession of one Reay, who claims title to said portion of said lot; in said condition it was appraised at and is worth the sum of five thousand dollars." Also, "that it is necessary to sell the greater portion of the real estate of deceased for the purpose of paying the debts against the estate and the expenses of administration; and that, in view of the possession of the lot on Van Ness Avenue hereinbefore described being partly held adversely by another, and the value thereof being thereby affected, it would be advisable to sell all the lots on the Potrero hereinbefore described, rather than the lot on Van Ness Avenue." The petition concluded with a prayer for a sale of "the whole of the said real estate situated on the Potrero of San Francisco, or so much or such parts thereof as this court shall deem necessary; that such sale may be made at private sale, and that such other and further order be made as is meet in the premises." The objection made by appellant, at the trial, to this petition was based upon the following grounds only: —

"1. That it does not appear from any evidence before the

court that the lot in question was any part of the estate of said Muhlendorff, deceased.

"2. On the ground that the petition, on its face, is to sell other real estate, and not the lot in question.

"3. That any proceedings which might be taken by the probate court in the matter of the sale of real estate upon said petition would be without jurisdiction, for the reason that the statute requires that an administrator or executor, in order to sell real estate in the probate court, must proceed by petition to sell that particular real estate."

· There was no objection made to the petition on the ground that it failed to state the condition of the property, and therefore no such objection can be considered on this appeal, but the petition must be treated as containing a proper statement as to such condition. The only ground of objection made to the petition at the trial, that appellant presents for our consideration, is the second one quoted above. We think the probate court had jurisdiction to order the sale of the Van Ness Avenue property under the general prayer "that such other and further order be made as is meet in the premises." Indeed, it would seem from the statute in force at the time the sale in question was had that the court is not controlled as to its order of sale by the desire of the executor, or by his prayer, or by the representations contained in the petition. All that is necessary in the petition is, that it shall state the jurisdictional facts required by the statute, and then, "if the court is satisfied, after a full hearing upon the petition, and an examination of the proofs and allegations of the parties interested, that a sale of the whole or some portion of the real estate is necessary, for any of the causes mentioned in this article, or if such sale be assented to by all the persons interested, an order must be made to sell the whole, or so much and such parts of the real estate described in the petition as the court shall judge necessary or beneficial." (Belknap's Probate Law, 3d ed., sec. 1543, p. 139; Code Civ. Proc., sec. 1543.) The attack on the petition here is collateral, and not direct, and the petition must be held sufficient as against the objection here considered. (*Dennis* v. *Winter*, 63 Cal. 16.) The petition being sufficient, it will be presumed, from the orders and notices which the record shows to have been placed in evidence, that the order of sale was valid.

7. The fifth and seventh defenses as set up in the answer

are disposed of by the finding directed to the various statutes of limitations pleaded in the answer by the numbers of the sections of the code in which they were respectively contained.

The other points made on behalf of appellant are immaterial.

The judgment and order appealed from should be affirmed, and it is so ordered.

Hearing in Bank denied.